IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 9, 2024

**RICKY HUNT v. STATE OF TENNESSEE**

**Appeal from the Judgement of the Shelby County Criminal Court**
**No. 13-00169**          **Jennifer Johnson Mitchell, Judge**

_____

**No. W2023-01769-CCA-R3-PC**
_____

The Petitioner, Ricky Hunt, pleaded guilty to two counts of second-degree murder and one count of attempted especially aggravated robbery in exchange for an effective thirty-year sentence. The Petitioner filed a petition for post-conviction relief, along with two amended petitions. After an evidentiary hearing, the post-conviction court denied the post-conviction petition. On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition because: (1) trial counsel was ineffective for failing to explain the corroboration requirement regarding accomplice testimony and for failing to help him file a motion to withdraw his guilty plea; and (2) his guilty plea was not knowingly and voluntarily entered because trial counsel failed to advise him that his sentence was required to be served at 100%. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JOHN W. CAMPBELL, SR., J., joined.

Michael E. Scholl, Memphis, Tennessee, for the appellant, Ricky Hunt.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Russell Born, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A. Guilty Plea Hearing**

This case arises from the murder of Cortez Mallard, which occurred on July 21, 2012. For this killing, the Shelby County grand jury indicted the Petitioner for two counts

of first-degree murder and one count of attempted especially aggravated robbery. At the guilty plea hearing, where the Petitioner pleaded guilty to two counts of second-degree murder and one count of attempted especially aggravated robbery, the State articulated the facts it would have proven had the case gone to trial as follows:

> On July 21st, 2012, the victim, Cortez Mallard, arrived at the Homestead Suites Hotel which is located . . . in Memphis, Shelby County, Tennessee. When he got out of the car he was approached by a male, actually two males, one armed with a handgun, where they tried to get money from him. A struggle ensued over the gun at which time the gunman pulled-back and had shot him once and then shot him a couple more times. Mr. Mallard at that point ran to the lobby of the hotel where he later died.

> When the officers got on the scene and crime scene arrived they found Mr. Mallard deceased in the lobby, the hotel lobby. On the scene they found two cell phones, the victim's cell phone and a cell phone they traced back to a Justin Smith.

> Once they got Justin Smith in custody they interviewed him, at which time he told the police that himself, the defendant, Mr. Hunt, and a female driver of a car, Kierra Brooks, had arrived at that hotel where the female had called the victim, Mr. Mallard, to meet her at this hotel. At which time he showed up there was an attempt of robbery, he didn't have anything on him. When Mr. Hunt said where's the money at, he didn't have anything, a struggle ensued and he was shot and killed.

> We interviewed Kierra Brooks, she was prepared in this trial to testify against Mr. Hunt, so was Justin Smith as well. We had a witness by the name of Torry Luster who admitted that he provided a gun to Justin Smith which he thought was just going to be used for protection, not for a robbery. We did locate that weapon.

The State informed the trial court that, while it was prepared to go to trial, this plea agreement was a fair and reasonable settlement because there would have been some accomplice testimony issues if the case went to trial, which it felt it could overcome. It explained, however, that the Petitioner had posited that the State may not be able to prove sufficient corroboration as much of the evidence hinged on Ms. Brooks's testimony. Because of this possibility, the State agreeability to the plea agreement.

Therefore, based on this evidence, the Petitioner pleaded guilty to two counts of second-degree murder and one count of attempted especially aggravated robbery. Upon

questioning by the trial court, the Petitioner said his trial counsel ("Counsel") had reviewed with him the guilty plea agreement and that he understood that agreement. He understood the charges against him, his right to a trial by jury, and the charges to which he was entering his plea. He understood that he was facing a sentence of life in prison for first degree murder and a sentence of fifteen to sixty years for a second-degree murder conviction. He understood that those sentences must be served at 100%. He understood the sentences associated with the other charges he faced and wanted to give up his right to a trail and enter his guilty plea. The Petitioner understood that these charges could be used against him in the future and expressed satisfaction at Counsel's representation. The Petitioner said Counsel kept him advised and appraised of all matters, discussed defenses with him, and the Petitioner had no complaints about his representation.

After ensuring that the Petitioner understood his rights, the trial court stated the following:

> If you have been convicted of murder in the first degree, you could have been facing life in prison. If you had been convicted of murder in the second degree, you could have been facing anywhere from fifteen to sixty years in prison depending on your range. Those sentences are at a hundred percent. Do you understand that?

The Petitioner acknowledged that he understood these facts and that his sentences could be ordered to be served consecutively if not part of a guilty plea agreement. The Petitioner acknowledged that Counsel had explained the guilty plea agreement to him, as well as the charges against him and their potential sentences. The Petitioner then agreed that the State could have proven the facts as it articulated and expressed his desire to enter a plea of guilty. The trial court accepted the Petitioner's guilty pleas and entered the sentence agreed to by the parties.

## B. Post-Conviction Petition

On July 22, 2015, the Petitioner filed a motion to withdraw his guilty plea contending that the State withheld material and exculpatory evidence.[1] The trial court appointed the Petitioner counsel who filed a petition for post-conviction relief, which is the basis for this appeal. The petition contended that the Petitioner did not knowingly and voluntarily enter his guilty pleas because he did not fully understand the consequences of his sentence before entering his plea. The petition further contended that the Petitioner

---

[1] The Petitioner has not pursued the motion to withdraw the guilty plea, which the trial court denied December 5, 2023, and this appeal relates only to the subsequently filed petition for post-conviction relief.

received the ineffective assistance of counsel because: Counsel failed to adequately investigate the case; failed to confer with the Petitioner about the indictment, defenses, and evidence; failed to interview critical witnesses; and failed to advise the Petitioner about the consequences of his guilty pleas.

At a hearing on the post-conviction petition, the parties presented the following evidence: The Petitioner initially testified that he had regular meetings with Counsel, but he later said that he did not speak Counsel in the weeks before trial. He said that he only spoke with him the day before trial when the two discussed the guilty plea. The Petitioner claimed that he wanted to go to trial but was convinced otherwise by Counsel, who told him that he would be convicted of a life sentence if his accomplice, Ms. Brooks, testified against him. The Petitioner said that Counsel did not explain to him that there had to be additional, independent evidence against him in addition to an accomplice's testimony. The Petitioner said that the other evidence in the State's possession, including fingerprints and cell phones, did not tie him to the offense. Further, he was unaware of any evidence that would tie him to this offense. He said, therefore, he would not have entered his guilty plea had he known that the State needed other corroborating evidence.

The Petitioner testified that, on the day he entered his guilty plea, he asked Counsel to file a motion to withdraw his guilty plea. Counsel responded that, if the Petitioner stayed out of trouble, Counsel would call him back in two weeks. Counsel never called him, so the Petitioner tried to file a motion himself, but, by then, the judgment against him was final. The Petitioner then timely filed a petition for post-conviction relief.

When asked if he understood the length of the sentence associated with his plea, the Petitioner testified that he believed he could reduce the service of his sentence from 100% to 65% based on good behavior. He only discovered otherwise when he arrived at the penitentiary and learned that he would have to serve ten to twelve years before he got any good credit. This would result in the Petitioner serving 85% of the sentence. He said that, had he known this, he would not have pleaded guilty.

On cross-examination, the Petitioner testified that he met with Counsel the Sunday before trial and then also a "couple of times" before. The Petitioner said that Counsel visited him a few times in jail, but that Counsel did not listen when the Petitioner spoke to him about his case. The Petitioner acknowledged that, in addition to meeting with Counsel, he wrote counsel letters. He identified one such letter and agreed that it stated: "I'm ready to sign before I go to trial. I don't want to go to trial, period, sir." He said, however, that he did not recall sending this letter and that he did not recognize the handwriting. He denied writing this letter to Counsel, noting that his name was misspelled in the letter.

4

The Petitioner said that he met with Counsel on May 3, 2015, the day before his trial was to begin. The Petitioner was fully prepared and wanted to go to trial. The Petitioner agreed that he entered a guilty plea on May 4, but denied recalling the trial judge discussing with him the ramifications of his plea. After the State read portions of the guilty plea hearing, the Petitioner said that he understood the charges against him and that he could not be forced to enter a plea. He agreed that he told the judge during the guilty plea hearing that he was satisfied with Counsel's representation and had no complaints.

During redirect examination, the Petitioner testified that, while he was satisfied with Counsel's representation at the day of the guilty plea hearing, the issues supporting his claim for ineffective assistance of counsel arose after the hearing. The Petitioner maintained that, had he known he could not be convicted based solely upon a co-defendant's testimony and that he would not be let off early for good behavior, he would not have pleaded guilty.

In further recross-examination, the Petitioner identified the paperwork he signed as part of his plea agreement that indicated that his sentence was to be served at 100%. The Petitioner admitted that he had four previous felony convictions but testified that he had never dealt with this type of paperwork.

Under questioning by the trial court, the Petitioner agreed that Counsel told him that he would have to serve his sentence at 100% with fifteen percent sentencing credits for good behavior.

Counsel testified that he had served thousands of clients since beginning as a criminal defense attorney in August of 1995. Counsel began representing the Petitioner after his first attorney, Nigel Lewis, had prepped the case and had set a trial date in May of 2014. Counsel said that the work he did on the case began with going through all the discovery Nigel Lewis had collected, which included seven to ten CDs with video surveillance, 911 calls, witness statements, and other items of that nature. There were also 100 to 120 pages of documents given to Nigel Lewis by the State, which Counsel reviewed.

Counsel created his own notes with lists of witnesses and everything they had told investigators until that point. Counsel identified the notes he prepared for cross-examination and a list of witnesses he intended to call at trial. Counsel explained that the seventeen witnesses listed on the sheet had potential to be subpoenaed by the State, making them available for him to call as witnesses or cross-examine. Counsel spoke with the prosecutor, who assured him that all these witnesses would be under subpoena.

Counsel discussed the potential witnesses and discovery with the Petitioner. Counsel said that accomplice corroboration was never an issue in this case because, while

Ms. Brooks was an accomplice, Mr. Smith was not. Mr. Smith had not been charged in this case, and the State intended to call both Ms. Brooks and Mr. Smith to testify. Counsel explained that Mr. Smith rode with the Petitioner to the hotel where the crime occurred, watched the shooting occur, and gave a statement to the police. In this statement, Mr. Smith's recount of the story was very descriptive about what the Petitioner did and how he did it. He explained that the Petitioner stood over the victim, shouted at him demanding money, and shot him two more times. Counsel stated that he explained to the Petitioner how damaging this testimony was, but the Petitioner was confident that Mr. Smith would not testify this way in court. The Petitioner explained to Counsel that Mr. Smith was a friend and was very confident that his testimony would be very different from his original statement.

Counsel said that he interviewed Mr. Smith, who was happy to meet with him. Mr. Smith described himself as the Petitioner's friend. Counsel explained to Mr. Smith that the Petitioner believed what Mr. Smith told the police was not true and that Mr. Smith could be a witness who could verify that the Petitioner was not at the crime scene. Mr. Smith informed Counsel that everything he told police was true and that the Petitioner did commit this crime and needed to serve his time. Counsel stated that Mr. Smith's testimony would be devastating to the Petitioner's case as he was not an accomplice charged with the crime, he clearly genuinely liked the Petitioner, and he was still going to testify against him.

Counsel did not speak with Ms. Brooks because she was charged with this crime and represented by counsel.

Counsel testified that there was ample evidence tying the Petitioner to the crime. He said that, in addition to Ms. Brooks and Mr. Smith's testimony, there was surveillance video that showed the car arriving and leaving the hotel and phone records linking the Petitioner to the offense. The phone records showed the Petitioner and Mr. Smith communicating no less than ten to twelve times via cell phone on the day of the murder.

Counsel said that he met regularly with the Petitioner, who was "extremely on top of his case." Counsel saw the Petitioner at court appearances, of which there were six or seven, and visited him in jail at least eight times. The Petitioner also wrote him three or four letters. At times, the Petitioner expressed a desire to go to trial because the State said they would not accept less than a thirty-five-year sentence. Counsel said that the Petitioner wanted to settle the case for a twenty-year sentence, but the State rejected this offer. Counsel kept a record of every visit with the Petitioner, as is customary for his practice. He offered those records to the trial court.

Counsel presented a letter sent from the Petitioner to Counsel postmarked August 18, 2014, in which the Petitioner expressed his desire to plead guilty. Counsel said he recognized the Petitioner's handwriting.

Counsel said that there was also evidence he could have used in the Petitioner's defense. For instance, there were fingerprints on the side of the victim's car that did not belong to the Petitioner. Further, the phone found on the scene did not belong to the Petitioner.

Counsel said that he spoke to the Petitioner about sentencing and that both crimes he pleaded guilty to were 100% crimes. He said that he explained to the Petitioner that he could earn fifteen percent off for good behavior in prison. Counsel denied telling the Petitioner that he could earn thirty-five percent off his sentence for good behavior. He did explain that, even if the Petitioner served thirty years it would be less than half of what he would serve if he was convicted of first-degree murder.

Counsel said that, on the Sunday before trial, May 3, 2015, Counsel and the Petitioner met to discuss the case. Counsel showed the Petitioner the phone record documents. Despite this new evidence, they continued prepping for trial. On the day of trial, Counsel said that the Petitioner was optimistic that Mr. Smith and Ms. Brooks would not testify against him. The prosecutor, however, made it very clear that Ms. Brooks was going to be a witness at the trial. After hearing this and considering the phone records, the Petitioner chose to plead guilty to settle the case in exchange for a thirty-year sentence. Counsel said that the Petitioner was not enthusiastic about pleading guilty but felt as though he had no other option given the evidence against him and the potential for life in prison if he was found guilty.

Counsel said that the Petitioner did not contact him to withdraw his guilty plea, and Counsel was not aware the Petitioner was unhappy with the plea until months later. Counsel said he never promised the Petitioner that he would visit the Petitioner within the following weeks to discuss whether he would like to continue to move forward with his plea.

On cross-examination, Counsel again stated that he thought the Petitioner's chances of a satisfactory outcome were very low and that he was concerned about a first-degree murder conviction. He also said that, based on his experience, Mr. Smith's testimony would have been very damaging. He was most worried about Mr. Smith's and Ms. Brook's testimonies. The phone records just added to his worry that the case would have a bad outcome for the defense.

Counsel said that, although the Petitioner chose to plead guilty, it was a best interest plea, and the Petitioner maintained his innocence. Counsel said that, had the case gone to trial, he would have argued that Mr. Smith should be an accomplice, making his testimony less powerful. He still believed, however, that the State had sufficient evidence to corroborate their accomplice testimony through the phone records.

Based upon this evidence, the post-conviction court denied the Petitioner's petition for post-conviction relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition because: (1) trial counsel was ineffective for failing to explain the corroboration requirement regarding accomplice testimony and for failing to help him file a motion to withdraw his guilty plea; and (2) his guilty plea was not knowingly and voluntarily entered because trial counsel failed to advise him that his sentence was required to be served at 100%
.

## A. Ineffective Assistance of Counsel

To obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). Under the two prong test enunciated by *Strickland*, and adopted by our Tennessee courts, a defendant must show that counsel made errors that were so serious that counsel was not functioning as "counsel" as guaranteed by the Sixth Amendment and that the deficient performance prejudiced the defense so that he was denied a fair trial. The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different

procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

The post-conviction court found that the Petitioner had failed to prove his allegations of ineffective assistance of counsel by clear and convincing proof. About the accomplice testimony, it found:

> Corroboration of testimony was never an issue for [Counsel] and he knew Justin Smith aka J-Rock was not an accomplice so [Counsel] never explained the intricacies of corroborating testimony to Petitioner. [Counsel] testified that this was never an issue. [Counsel] was familiar with the law and what the court's instruction about accomplices would be. [Counsel] knew that based on his preparation there was enough evidence to corroborate the co-defendant's testimony. Just because [Counsel] did not inform and explain to Petitioner corroborating evidence does not mean that [Counsel] was not aware of the issues and that his advice to his client was not sound. [Counsel] was advising the Petitioner to accept the plea based on all of the information . . . that he had recently received about the co-defendant's intention to testify and the other proof. [Counsel] appeared to be prepared for trial and knew what the testimony was going to be. [Counsel] testified there was more than enough evidence to corroborate the co-defendant's story including the testimony of Petitioner's friend, J-Rock.

Our review leads to the same conclusion. At the time of the Petitioner's guilty pleas, a conviction could not be based solely on the uncorroborated testimony of an accomplice. *See State v. Thomas*, 687 S.W.3d 223, 239 (Tenn. 2024).[2] Ms. Brooks was by all accounts

---

[2] As the parties note, the Tennessee Supreme Court abrogated this rule but did so only on a prospective basis. *Thomas*, at 245.

10

an accomplice. Mr. Smith was, however, not an accomplice as he was never charged with this offense and was only an observer of the offense. Further, even if he were considered an accomplice, there were phone records that indicated that Mr. Smith and the Petitioner had spoken several times, which Counsel believed would serve as ample corroboration. We conclude that the post-conviction court correctly found that trial counsel's performance did not fall below an objective standard of reasonableness so as to render the guilty pleas involuntary and entitle the Petitioner to withdraw the guilty pleas. We conclude that the evidence in the record does not preponderate against the post-conviction court's findings and that the trial court properly denied the petition for post-conviction relief.

Further, we conclude the Petitioner has waived any contention that he is entitled to relief because Counsel did not assist him in filing a motion to withdraw his guilty plea. The Petitioner did not include this issue in his petition for post-conviction relief, and the post-conviction court did not issue a ruling on this issue. "A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," with certain exceptions not applicable in the present case. T.C.A. § 40-30-206(g) (1997). The Petitioner is not entitled to relief on this issue.

## B. Knowingly and Voluntarily Guilty Plea

The Petitioner next contends that his guilty plea was not knowingly and voluntarily entered because he did not fully understand the consequences of his plea, namely that his sentence would be required to be served at 100%.

In the context of a guilty plea, the effectiveness of counsel's representation "may implicate the requirement that a plea must be entered knowingly and voluntarily, i.e., that the petitioner made the choice to plead guilty after being made aware of the significant consequences of such a plea." *Johnson v. State*, No. W2015-02498-CCA-R3-PC, 2017 WL 192710, at *4 (Tenn. Crim. App. Jan. 17, 2017), *no perm. app. filed; see State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). Stated another way, once a defendant enters a guilty plea, the effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

"To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore v. State*, 485 S.W.3d 411, 418-19 (Tenn. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In the context of a guilty plea, the analysis of prejudice focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy

11

the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *see also Taylor v. State*, 443 S.W.3d 80, 84-85 (Tenn. 2014). Because a post-conviction petitioner bears the burden of establishing both deficient performance and resulting prejudice, "a court need not address both concepts if the petitioner fails to demonstrate either one of them." Garcia, 425 S.W.3d at 257.

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In the case under submission, the Petitioner during the guilty plea hearing clearly indicated that he understood the charges, the plea, and the sentence. He also understood the consequences of proceeding to trial and the potential sentence that he faced, which was much greater than the one he received. Before accepting his plea, the trial court informed him that a sentence for first degree or second degree murder were both required to be served at 100%. The Petitioner indicated Counsel had reviewed with him the charges and potential sentences. He further informed the trial court that he understood that his sentence was required to be served at 100%. We conclude that Counsel was not deficient in this regard. We further conclude, however, that the Petitioner cannot prove that, but for Counsel's representation he would have proceeded to trial. The record includes a written letter by the Petitioner indicating his desire to enter a guilty plea, the Petitioner was facing life in prison and settled for thirty years, the trial court, and likely Counsel, informed him that his sentence would be served at 100%, and there was ample evidence against the Petitioner, including non-accomplice testimony. The Petitioner is not entitled to relief on this issue.

## III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____

ROBERT W. WEDEMEYER, JUDGE